853 So.2d 856 (2003)
James E. OTIS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-00410-COA.
Court of Appeals of Mississippi.
August 26, 2003.
*858 Lesa Harrison Baker, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
EN BANC.
IRVING, J., for the Court.
¶ 1. James E. Otis was convicted of armed robbery by a jury in the Circuit *859 Court of Lincoln County and sentenced as a habitual offender to life in prison in the custody of Mississippi Department of Corrections with no eligibility for parole or probation. Feeling aggrieved by this decision, Otis makes a timely appeal and asserts the following issues: (1) whether the trial court erred in sentencing him to life in prison without parole under the habitual offender statute, Mississippi Code Annotated section 99-19-83, when his prior convictions did not conform to the statutory requirements, (2) whether the trial court erred in allowing the State during closing argument to comment on his failure to testify, (3) whether the trial court erred in failing to grant a mistrial after a State's witness testified that Otis had been arrested in another jurisdiction on a similar charge, (4) whether the trial judge erred in denying his motion for a judgment notwithstanding the verdict, or in the alternative, a motion for a new trial, (5) whether the trial court erred in allowing the State to continue questioning during voir dire after the State had the jury members commit to the amount of evidence on which they would or would not be able to convict, and (6) whether the cumulative effect of errors in the trial court denied the defendant his constitutional right to a fair and impartial trial.

FACTS
¶ 2. On June 23, 2000, an individual walked into Allstar Rent to Own, a rental appliance store, made his way to the back sales counter, and confronted the store's clerk. The individual displayed a gun, demanded money, and made the clerk lie on the floor. He then wrapped his hand in his t-shirt, opened the cash drawer of the register, and retrieved approximately $53 in currency. The individual tore the phone out of the wall, took a cordless phone that was present, and exited the store. Approximately a month after the robbery, the clerk identified Otis in a photo lineup as the person who robbed the store.
¶ 3. Otis was indicted by a Lincoln County grand jury on October 11, 2001. A jury trial was held on January 31, 2002, on the charge of armed robbery, and the jury returned a verdict of guilty but could not agree as to the sentence. On the next day, the court sentenced Otis as a habitual offender to a term of life in prison in the custody of the Mississippi Department of Corrections with no eligibility for parole or probation.
¶ 4. Following his conviction and sentence, Otis filed a motion for judgment notwithstanding the verdict or in the alternative, motion for a new trial. This motion was overruled by the court on the same day it was filed, resulting in this appeal.

ANALYSIS AND DISCUSSION OF THE ISSUES
1. Sentencing under the Habitual-Offender Statute
¶ 5. Otis first contends that he was improperly sentenced under the state's life-imprisonment habitual offender statute, Mississippi Code Annotated section 99-19-83, because his prior convictions do not meet the requirements for enhanced punishment under the statute. The State acknowledges that Otis's argument "appears to have merit," and suggests that this Court should remand this case for re-sentencing under the state's maximum-term-imprisonment-habitual-offender statute, Mississippi Code Annotated section 99-19-81.
¶ 6. The life-imprisonment-habitual-offender statute reads as follows:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought *860 and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
Miss.Code. Ann. § 99-19-83 (Rev.2000).
¶ 7. Before proceeding to address Otis's argument, we state additional facts. The record reveals that on September 20, 1993, Otis was convicted, pursuant to a plea of guilty, of the following offenses: in cause number 11,222, count one, kidnapping, count two, robbery; in cause number 11,223, grand larceny; in cause number 11,226, four counts of felonious bad checks. In cause number 11,222, Otis was sentenced to two concurrent terms of twenty years, one term for each count. In cause number 11,223, Otis was sentenced to five years to run consecutively with the sentences imposed in cause number 11,222, and with the proviso that, upon the completion of the sentence in cause number 11,222, the remainder of the sentence would be suspended for five years. In cause number 11,226, Otis was sentenced to concurrent terms of three years on each of the four counts with the sentences to run consecutively to the sentences imposed in cause number 11,222, and with the proviso that, after the completion of the sentence in cause number 11,222, the remainder of the sentence would be suspended for five years.
¶ 8. Otis admits that, prior to being convicted of the instant crimes, he had been convicted of seven felonies: kidnapping, robbery, larceny, and four counts of felonious bad checks. However, he asserts that the charges for kidnapping and robbery were not "separately brought" and more importantly that the charges did not "arise out of separate incidents at different times" as required by the life-imprisonment-habitual-offender statute. Therefore, he concludes that the circuit court erred when it sentenced him as a habitual offender under section 99-19-83 because he lacks the prior convictions required by the statute. We examine this proposition and begin our examination by returning to a discussion of the prior robbery and kidnapping convictions.
¶ 9. The prior convictions for kidnapping and robbery emanated from a single two-count indictment filed in cause number 11,222. At the sentencing hearing, no testimony was adduced which spoke to the timing or the sequence of events which gave rise to the two charges. We are informed only by the language in the indictment comprising the predicate offenses. It concludes with the following pertinent language:
[A]ll of said conduct alleged and set forth in counts one and two of this indictment having then and there been based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, and against the peace and dignity of the State of Mississippi.
Clearly, based on the language in the indictment, the kidnapping and robbery charges arose out of a single incident. Therefore we find, on the authority of Nicolaou v. State, 534 So.2d 168 (Miss. 1988), Riddle v. State, 413 So.2d 737 (Miss. 1982), and Walls v. State, 759 So.2d 483 (Miss.Ct.App.2000), that Otis's prior kidnapping and robbery convictions must be counted as one felony for determining the number of prior felonies that he has committed. However, for two reasons, our inquiry does not end here. The first reason *861 is that, although these two felonies must be counted as one in determining the number of prior felonies committed, there is no logical reason to count the two separate sentences, which he received for the two felonies, as one sentence. The second reason is that Otis has committed five other prior felonies.
¶ 10. The question that must be answered is whether the concurrent sentences, which Otis received for the kidnapping and robbery convictions, may be counted as separate terms in satisfaction of the requirement that a defendant must "have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution" before he may be sentenced under Mississippi Code Annotated section 99-19-83. If they may, the trial judge did not err in sentencing Otis to life imprisonment because, at the time of sentencing in this case, he had previously been convicted of seven felonies, one of which was a crime of violence, and had served more than one year of the concurrent sentences. We examine this proposition next, and we note Otis's assistance on this issue.
¶ 11. Citing Magee v. State, 542 So.2d 228 (Miss.1989), Otis concedes that he has served terms of one year or more for both the kidnapping and robbery convictions. In Magee, the defendant committed a house burglary on August 9, 1983, and a robbery on August 13, 1983. Id. at 235. During a single, but consolidated hearing, the defendant entered separate pleas of guilty to both offenses. Id. The defendant was sentenced to seven years for each offense with the sentences to run concurrently. Id. On appeal, our supreme court held that, for purposes of the habitual offender statute, "serving one year or more on concurrent sentences for separate convictions amounts to serving more than one year on each sentence." Id. at 236 (quoting King v. State, 527 So.2d 641, 645 (Miss.1988)).
¶ 12. We agree with the dissent that the precise issue we face was not squarely presented in Magee and that our issue is a matter of first impression. However, we find Magee to be helpful and persuasive. In Magee the defendant had committed only two prior felonies and received concurrent sentences for both of them. Each felony was committed at a separate time and arose out of separate incidents. Here Otis has committed seven prior felonies. He received concurrent sentences for two of the felonies and consecutive sentences for the other five. The two felonies for which he was given the concurrent sentences arose out of a single incident and occurred at the same time. Therein lies our problem. We approach the resolution of the problem by looking at the purpose of the statute as well as by analyzing the requirements of it.
¶ 13. First, as to the purpose, there can be little doubt that the statute is aimed at recidivists. Therefore, it was the repetitive criminal conduct that the legislature had in its sights in passing the habitual offender statute. This is borne out by the fact that, before a defendant can be given the severe sentence required by the statute, he must have committed at least three felonies. This brings us to our second inquiry, the statute's requirements.
¶ 14. As already observed, the defendant must have been convicted of at least two felonies, separately brought and arising out of separate incidents, prior to committing the one for which he is given the life sentence. Of the prior felonies, whatever the number, one of them must be a crime of violence. Finally, the defendant must have been sentenced to and served one year or more in a penal institution for at least two prior felonies.
*862 ¶ 15. It is the consideration of the last requirement that causes us and the dissent to part company. We find that this last requirement has been satisfied when the defendant has been sentenced to and served one year or more for any two prior felonies whether they arise out of the same incident or not, provided that he has also committed at least two felonies that were separately brought and arose out of separate incidents. We do not read Mississippi Code Annotated section 99-19-83, Nicolaou, Riddle, or Walls as requiring that the sentences received for those felonies, which arise out of the same incident, be counted as one sentence. Rather, we read the statute and the cases construing it to require only that two or more felonies, which arise out of the same nucleus of operative facts, be counted as a single felony if the defendant is later charged as a habitual offender for the commission of subsequent felonies. But there is no logical reason for counting as a single sentence the two separate sentences that he received for the two crimes which he committed during his one-time crime spree because the purpose of the statute is to deter subsequent criminal conduct, not to deter the giving of concurrent sentences.
¶ 16. It is understandable why two crimes originating out of the same nucleus of operative facts should be counted as one crime for evaluating whether one should receive an enhanced penalty for his continual involvement in criminal activity. If the purpose of the statute is to deter subsequent criminal activity, it would be patently unfair to count multiple crimesarising out of a common nucleus of operative facts and committed at the same time by an individual during one foray into criminal activityas separate crimes because neither of the multiple crimes constitutes subsequent involvement in criminal activity. Such an interpretation is consistent with the laudable purpose of the statute: to stiffen the penalty for repeat offenders, not for current offenders who commit several crimes during their one foray into criminal activity.
¶ 17. In our case, either the robbery conviction or the kidnapping conviction, but not both, is a necessary predicate crime. In Nicolaou, Riddle, and Walls, each of the crimes, which arose out of a common nucleus of operative facts, had to be counted as separate crimes in computing the number of prior felonies. That is not our case. Here, unlike the defendants in Riddle and Walls, Otis has been convicted of more than two prior felonies, and only one of his crimes, which arose out of the same incident, must be counted in determining the requisite number of prior felonies. Moreover, even when both of his felonies, which arose out of a single incident, are counted as a single felony, the requirement of two prior felonies is still satisfied.
¶ 18. In Magee, the defendant served only one prison sentence, yet our supreme court said that was sufficient for habitual-offender sentencing purposes, notwithstanding the language of the habitual offender statute which requires the defendant to have previously been sentenced to and served separate terms of one year or more in a penal institution. Consequently, the principle to be drawn from Magee is that, for purposes of the habitual-offender sentencing statute, if the defendant has been convicted of at least two prior felonies separately brought and arising out of separate incidents, then habitual-offender sentencing is permissible even though only one year or more has been served as a result of concurrent sentencing. In other words, what is required are separate convictions for two prior felonies and separate sentences for two prior felonies; it is not a requirement that separate *863 periods of time be physically served for the separate convictions.
¶ 19. Applying the teachings of Magee to our facts, we find that Otis qualifies for life-imprisonment-habitual sentencing. Prior to the instant charges, he had committed seven felonies with more than two of them being separately brought and arising out of separate incidents, and one of his felonies was a crime of violence. He had been sentenced to two separate terms of one year or more in the state penitentiary and had served more than one year of the sentences. If Otis's predicate crimes involved only the prior convictions for robbery and kidnapping, we would have a different case. While the robbery and kidnapping convictions must count as one crime for determining the number of prior felonies, Magee makes it clear that serving only one-year of concurrent sentences is sufficient to satisfy the "sentence and time-served requirements" of the habitual-offender sentencing statute.
¶ 20. We see no reason to hold that concurrent sentences given for two separate crimes arising out of the same incident do not meet the sentencing requirements of the statutewhen concurrent sentences given for two separate crimes arising out of different incidents dosince it is the subsequent criminal conduct of the defendant, not his prior sentence, that places him within the reach of the life-imprisonment habitual statute. This is especially true since only one year or more of concurrent sentences must be physically served in order to qualify for habitual sentencing. To hold otherwise, would be to assign a greater importance to the prior sentence than to the defendant's subsequent criminal behavior. Such a construction of the statute would be nonsensical, and we will not assign such a nonsensical purpose to the legislature in passing the statute. Therefore, we find that the trial court did not err in sentencing Otis to life in prison as a habitual offender. This assignment of error is without merit.
2. The State's Closing Argument
¶ 21. In this assignment, Otis complains that the following statement made by the prosecutor during closing argument was improper because it commented upon his failure to testify:
I want you to remember Kerry Riddle's testimony.... She just didn't see him passing, walking down the street, going down an aisle at Wal-Mart, or bump into him briefly and remember his face. She had time to look at him. She had enough time where she could tell the officer. she [sic] didn't see just his face. She saw his height. She saw his build. She saw his complexion. She saw more than his forehead. She saw and can remember how the hat was sitting on his head. She saw sunglasses, but she told you they covered from just under the eyebrow to just under the eye, only about that long (gesturing). They didn't cover much of his face at all. Mr. Otis is a big man and there was a lot of his face that was uncovered. She saw the hairline that she could see underneath the cap. A baseball cap doesn't sit all the way down here. She noticed that hairline. She noticed that the hair she could see was short. And she noticed that when he spoke, his voice was deep. Now, y'all haven't been able to hear his voice today.

¶ 22. The State counters that Otis did not preserve this error by objecting at the time the comment was made. Alternatively, the State argues that the statement was not a comment on Otis's decision not to testify but instead was a part of the discussion of the overall evidence against Otis.
*864 ¶ 23. "It is the rule in this State that where an objection is sustained, and no request is made that the jury be told to disregard the objectionable matter, there is no error." Minor v. State, 831 So.2d 1116, 1123(¶ 22) (Miss.2002) (citing Perry v. State, 637 So.2d 871, 874 (Miss.1994)). "Furthermore, `[f]or this Court to consider claims of alleged erroneous comments of the prosecuting attorney in closing arguments, a contemporaneous objection must have been made; otherwise, the point is deemed waived.'" Id. at 1123(¶ 22) (citing Banks v. State, 782 So.2d 1237, 1242 (Miss. 2001)).
¶ 24. After reviewing this passage, we agree with the State that this argument is procedurally barred. When the State was making its closing argument, Otis did not object. Procedural bar notwithstanding, we also agree with the State that this comment, when viewed in context, does not appear to be a deliberate attempt by the State to comment on Otis's right to remain silent. Even if we were to hold that the State crossed the line, we would also be constrained to hold that, considering the totality of the circumstances and the evidence here, the error was harmless. However, we caution prosecutors to be extremely careful in this area. While there may be some circumstances when the jury may get a chance to hear a defendant's voice without the defendant actually testifying in his defense, those instances will be rare.
3. The Denial of Motion for a Mistrial
¶ 25. Otis next contends that during the cross-examination by his counsel of one of the State's witnesses, the witness made an impermissible comment regarding Otis's prior criminal history. Otis further concedes that he did not make a contemporaneous objection, but requested a mistrial at the close of the witness's testimony because he did not want to draw undue attention to the comment. Acknowledging that the judge instructed the jury to disregard the witness's comment, Otis contends that the error was not cured by this instruction.
Case law unequivocally holds that the trial judge is in the best position for determining the prejudicial effect of an objectionable comment. Thus, the judge is vested with discretion to determine whether the comment is so prejudicial that a mistrial should be declared. Where "serious and irreparable damage" has not resulted, the judge should "cure" or remedy the situation by "admonish[ing] the jury then and there to disregard the improp[riety]."
Alexander v. State, 602 So.2d 1180, 1182-83 (Miss.1992) (quoting Johnson v. State, 477 So.2d 196, 210 (Miss.1985)). Where a trial court sustains a defendant's objection and instructs the jury to disregard the question, the remedial acts of the trial court are deemed sufficient to remove any taint of prejudice from the jurors' minds as the jury is presumed to follow the trial court's instructions. Strahan v. State, 729 So.2d 800, 808(¶ 34) (Miss.1998).
¶ 26. The following exchange occurred between Police Chief Arlustra Henderson and counsel for Otis:
Q: Now the photos that were provided today, were actually provided to the DA's office yesterday; is that correct?
A: That is correct.
Q: Now between ... let's assume the identification was the day before you issued that arrest warrant, so I'm going to say July 20th of the year 2000, and the month of October, 2001, when the case was eventually presented to the grand jury, what additional investigation, if any did you do during those months?
*865 A: We couldn't find the suspect after we signed the affidavit. Detective Jones had a conversation some way.... Clinton Police Department had arrested the suspect on something similar to what we was working on. We asked the police department to put a hold on the suspect.
Q: To your knowledge, what was the outcome of those Clinton charges.
A: Detective Jones, you'll have to talk to him about that. He handled that.
Q: I will ask him that.
(emphasis added).
¶ 27. In an attempt to clarify the statement made by Chief Henderson, Otis's counsel questioned Assistant Police Chief Nolan Jones about the other charge. Jones stated that he had been unable to obtain a disposition on the charge. Jones went on to testify that he believed the other charge was strong-armed robbery and not armed robbery, but admitted that he was not aware of any conviction or any final outcome of the charge.
¶ 28. At the close of Jones's testimony, Otis's counsel requested a mistrial based upon Chief Henderson's testimony which she deemed to be inappropriately referring to Otis's prior criminal activities. The trial judge denied her motion upon finding it untimely but decided to instruct the jury to disregard Chief Henderson's prior statement regarding the "similar charge."
¶ 29. We find that no serious and irreparable damage resulted from Chief Henderson's comment and that the judge adequately cured or remedied the situation by admonishing the jury to disregard the comment about similar charges. This finding is bolstered by the fact that defense counsel, after consulting with Otis, ratified the giving of the instruction as sufficient to cure the error.
4. Denial of Post-trial Motions
¶ 30. Otis's next contention is that the trial court erred by denying his motion for judgment notwithstanding the verdict, or in the alternative, it erred by denying his motion for a new trial. According to Otis, the State failed to present sufficient factual evidence to the jury for it to find beyond a reasonable doubt that he committed the crime of armed robbery. He explains that the State presented no physical evidence that connected him to the scene of the crime and that the testimonial evidence of the victim's identification was extremely insufficient.
¶ 31. On the issue of legal sufficiency, reversal can only occur when evidence of one or more of the elements of the charged offense is such that "reasonable and fair-minded jurors could only find the accused not guilty." Hawthorne v. State, 835 So.2d 14, 21 (¶ 31) (Miss.2003) (citing Wetz v. State, 503 So.2d 803, 808 (Miss.1987)). "The standard of review for a denial of a directed verdict, peremptory instruction and a JNOV are identical." Id. at 21 (¶ 31) (citing Coleman v. State, 697 So.2d 777, 778 (Miss.1997)).
¶ 32. "In regard to the weight of the evidence, it is well established that matters regarding the weight of the evidence are to be resolved by the jury." Id. at 21 (¶ 32) (citing Neal v. State, 451 So.2d 743, 758 (Miss.1984)). However, "[a] motion for new trial challenges the weight of the evidence." Id. at 22 (¶ 32) (citing Sheffield v. State, 749 So.2d 123, 127 (¶ 16) (Miss.1999)). A reversal is warranted only if the trial court abused its discretion in denying a motion for new trial. Sheffield, at 127 (¶ 16) (citing Gleeton v. State, 716 So.2d 1083 (Miss.1998)). A new trial will not be granted unless the verdict is so *866 contrary to the overwhelming weight of the evidence that an unconscionable injustice would occur by allowing the verdict to stand. Id. (citing Groseclose v. State, 440 So.2d 297, 300 (Miss.1983)). "However, if a jury's verdict convicting a defendant is against the overwhelming weight of the evidence, then the remedy is to grant a new trial." Hawthorne, 835 So.2d at 22 (¶ 33) (citing Collier v. State, 711 So.2d 458, 461 (Miss.1998)).
¶ 33. We find that the trial court did not err in denying Otis's motions for judgment notwithstanding the verdict or, in the alternative, motion for new trial. There was sufficient evidence presented by the State for reasonable and fair-minded jurors to find Otis guilty of armed robbery. Assistant Police Chief Nolan Jones testified that he conducted a photo lineup and that the victim immediately identified Otis as the perpetrator of the armed robbery. Kerry Riddle gave a detailed physical description of the perpetrator, testified to what the perpetrator was wearing, and affirmed that Otis was the culprit of the crime by identifying him at trial. The jury returned a verdict of guilty after being adequately instructed by the trial court on how to consider evidence. We decline to disturb its findings. Further, we cannot say that permitting the verdict to stand would sanction an unconscionable injustice. This assignment of error lacks merit.
5. The Appropriateness of the State's Questions during Voir Dire
¶ 34. Otis next contends that the trial court erred in allowing the State to continue questioning during voir dire after the State had the jury commit to the quantity of evidence on which it would or would not convict. Moreover, he points out that the trial court failed to instruct the jurors that the State could not ask them to make such promises. We discuss in the following paragraph what transpired during voir dire.
¶ 35. The prosecution explained to the jury that the case involved an eyewitness's identification of an assailant who wore sunglasses and a baseball cap and asked whether members of the venire believed that the sunglasses or the baseball cap would necessarily keep the eyewitness from identifying him later if she saw him without these accessories. He then asked members of the venire whether they, knowing the facts earlier specified about the assailant, would consider the victim's identification as insufficient if it was the only evidence the State had to tie Otis to the robbery. Subsequently, the prosecution asked members of the venire whether they could tell him whether they could consider all of the evidence before deciding whether the evidence was sufficient. At this juncture, the trial court held a bench conference whereby the judge asked the prosecutor to clarify his questioning of the members of the venire to ensure that they understood that they were to look at all the evidence before rendering a decision, instead of basing their opinion on the production of an identifying mark of the assailant. The prosecutor then proceeded with his questioning in conformity with the judge's direction.
¶ 36. Our supreme court has directed that prosecuting attorneys avoid questions seeking a promise or commitment from the jury to convict if the State proved certain facts. West v. State, 553 So.2d 8, 22 (Miss. 1989) (citing Murphy v. State, 246 So.2d 920 (Miss.1971)). However, the court has often held that a party waives any and all claims regarding the composition of his jury if he fails to raise an objection before the jury is sworn. See Shaw v. State, 540 So.2d 26, 27 (Miss.1989); Thomas v. State, 517 So.2d 1285, 1287 (Miss.1987); Pickett v. State, 443 So.2d 796, 799 (Miss.1983).
*867 ¶ 37. At no time during the voir dire did Otis object to the prosecutor's line of questioning, nor did he ever request a curative instruction by the trial court. We note that the trial court has broad discretion in passing on the extent and propriety of questions that are addressed to the venire. Jones v. State, 381 So.2d 983, 990 (Miss.1980). An abuse of discretion will only be found where the record shows clear prejudice resulting from undue lack of constraint. Id. We find no abuse of discretion here.
6. Cumulative Effect
¶ 38. Otis finally urges this Court to deem the cumulative effect of the errors that he has assigned to be sufficient for reversal or remand.
¶ 39. In Wilburn v. State, 608 So.2d 702, 705 (Miss.1992), the court held that "individual errors, not reversible in themselves, may combine with other errors to make up reversible error." The question that must be asked in these instances is whether the defendant was deprived of a "fundamentally fair and impartial trial" as a result of the cumulative effect of all errors at trial. Id. If there is "no reversible error in any part, there is no reversible error to the whole." McFee v. State, 511 So.2d 130, 136 (Miss.1987).
¶ 40. We have found no reversible error among any of the allegations of error made by Otis. Consequently, there can be no cumulative error as there was no error in any of the separate points of contention. Therefore, we affirm Otis's conviction and sentence as a habitual offender under Mississippi Code Annotated section 99-19-83.
¶ 41. THE JUDGMENT OF THE CIRCUIT COURT OF LINCOLN COUNTY OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF LIFE AS AN HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $10,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LINCOLN COUNTY.
BRIDGES, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. McMILLIN, C.J., CONCURS IN PART AND DISSENT IN PART WITH SEPARATE OPINION JOINED BY KING AND SOUTHWICK, P.JJ., AND THOMAS, J.
McMILLIN, C.J., CONCURRING IN PART AND DISSENTING IN PART:
¶ 42. I concur with the majority that Otis's conviction must be affirmed. I respectfully disagree that Otis was properly sentenced under the more harsh provisions pertaining to habitual offenders found in Section 99-19-83 of the Mississippi Code. It is my view that Otis could only have been sentenced under Section 99-19-81 since the record fails to show that he has been previously convicted of two felonies arising out of separate incidents, and that, as to each of those convictions, he has served one year or more. The majority finds that the requirement of serving a year or more on two prior felony convictions is a "stand alone" requirement that can be met by serving two sentences even though the two convictions arise out of the same incident. According to the majority, the requirement of two previous unrelated convictions is a separate matter of inquiry that can be met by evidence of yet a third felony conviction unaccompanied by any proof that the defendant served time as to it. I do not think that a fair reading of the statute permits this interpretation.
¶ 43. The record shows that Otis had been previously convicted of the two crimes of kidnaping and armed robbery and was sentenced to (and, in fact, served) *868 more than one year as to each conviction. The majority concedes that these two charges arose out of a single incident and, thus, do not meet the requirement that there must be two convictions arising out of separate incidents. Instead, for this aspect of the statute, the majority treats these two convictions as but a single one and looks to proof of a number of different convictions to supply the necessary second conviction, none of which were accompanied by proof that Otis served time as to any of the convictions. (The majority recites some of the details of these convictions and notes that Otis appeared to have been sentenced to serve time on those convictions concurrently with the robbery and kidnaping conviction; however, the State in its brief concedes that "because of some sentencing oversight, the remaining felony convictions there was no time served towards those sentences.")
¶ 44. For purposes of analysis, the pertinent language of Section 99-19-83 identifying those eligible for punishment under its provisions is as follows:
Every person convicted ... of a felony who shall have been convicted twice previously of any felony ... upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more....
Miss.Code Ann. § 99-19-83 (Rev.2000).
¶ 45. Certainly, it would have been clearer had the legislative drafter said, "and who shall have been sentenced to and served separate terms of one (1) year or more ... on each of the aforesaid separately brought charges ...." However, a plain reading of the statute, in my view, suggests a sufficient nexus between the requirement of two separately occurring felonies and the requirement of two separate one year sentences to compel the conclusion that the separate sentences must have resulted from the same felony charges relied upon by the State to show the defendant's propensity for criminal behavior.
¶ 46. This interpretation of the statute has nothing to do with the question of whether the requisite separate sentences may or may not be served concurrently. As the majority has correctly observed, the Mississippi Supreme Court has answered that question in Magee v. State and in King v. State, by saying that two sentences, even if they are being served concurrently, constitute "separate terms" of confinement within the meaning of Section 99-19-83. Magee v. State, 542 So.2d 228, 236 (Miss.1989); King v. State, 527 So.2d 641, 645-46 (Miss.1988).
¶ 47. Neither case squarely addresses the situation where the concurrently-served sentences arose out of two related charges and the requisite "second" felony conviction was, in fact, a third crime that met the "separate incident" test but which did not result in the defendant serving a year or more in confinement. The King decision answers only the question of "whether serving one year or more on concurrent sentences for separate convictions amounts to serving more than one year on each sentence." King v. State, 527 So.2d at 645 (emphasis added). Although, in a strictly literal sense, all felony convictions are separate, it would be my view that the term "separate convictions" in this instance, when read in context, means the same thing as the phrase "charges separately brought" found in Section 99-19-83.
¶ 48. Thus Magee and King do not appear to support the result reached by the majority in this case. However, because they deal with a different, though related, issue, neither can it be said those decisions affirmatively exclude that outcome. Rather, I contend that the proper *869 outcome hinges on a question of first impression regarding the proper application of Section 99-19-83 to the undisputed facts of this case. Based on my view of what the statute requires, I respectfully conclude the majority has answered this first impression question incorrectly. Rather than affirm as to the validity of Otis's sentence, I would vacate the sentence and remand for re-sentencing under Section 99-19-81. Nathan v. State, 552 So.2d 99, 106 (Miss.1989).
KING AND SOUTHWICK, P.JJ., AND THOMAS, J., JOIN THIS SEPARATE WRITTEN OPINION.