# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-KA-01195-SCT

*KEVIN JACKSON a/k/a KEVIN K. JACKSON, SR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/18/1999 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS M. FORTNER |
| | ROBERT M. RYAN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/09/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/30/2002 |

**BEFORE SMITH, P.J., COBB AND DIAZ, JJ.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. On February 10, 1998, Kevin Jackson was indicted in the Hinds County Circuit Court on charges of murder, aggravated assault and the firing of a handgun into an occupied dwelling. Jackson was convicted by a jury on all counts and sentenced to life imprisonment for the murder, a consecutive 25 year imprisonment for the aggravated assault , and a 5 year imprisonment for firing into the occupied dwelling to run concurrently with the aggravated assault sentence. Following the denial of his post-trial motion for a new trial, Jackson appeals, raising three assignments of error (edited):

> **I. WHETHER THE TRIAL COURT ERRED BY NOT GRANTING JACKSON SUA SPONTE A JURY INSTRUCTION DEFINING THE DEFENSE OF ACCIDENT.**

> **II. WHETHER JACKSON RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.**

> **III. WHETHER JACKSON'S CONVICTIONS WERE SUPPORTED BY THE EVIDENCE ADDUCED AT TRIAL OR AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**

¶2. Concluding that all of Jackson's assignments of error are without merit, we affirm.

## FACTS

¶3. The facts underlying this case are not disputed, as Kevin Jackson freely admits to firing shots into the door of an occupied house, wounding one inhabitant and killing a small child, Jackson's own son. Jackson had previously lived with a woman named Quanda Anderson, with whom he had a son named Kevin, Jr. Eventually, the relationship ended, and Quanda and Kevin, Jr. moved back in with Quanda's mother, Betty Anderson. About two weeks later, on the morning of October 12, 1997, Jackson called Quanda and asked to see Kevin, Jr., but Quanda denied his request because her family had made plans to got to church that day. Upset (and by his own admission high on PCP, LSD and "elephant tranquilizer"), Jackson went to Quanda's house, where he tried to kick in the door and then fired several shots through the door, striking Betty Anderson and killing Junior. At the time of his death, Junior was only 17 months old.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED BY NOT GRANTING JACKSON SUA SPONTE A JURY INSTRUCTION DEFINING THE DEFENSE OF ACCIDENT.

¶4. Jackson first suggests that the trial court erred in not granting sua sponte a jury instruction defining the defense of accident. Or to put it another way, Jackson claims he was entitled to such an instruction even though he never requested it, and the absence of such an instruction constitutes plain error. The plain error doctrine permits this Court to review errors committed during trial, even if they are not properly preserved on appeal, where those errors impact fundamental rights. *Williams v. State*, 794 So.2d 181, 188 (Miss. 2001)("This Court has found plain error in failing to instruct the jury properly and failing to properly evaluate evidentiary matters").

¶5. Miss. Code Ann. § 97-3-17 (2000) provides for three scenarios in which a homicide shall be excusable:

> (a) When committed by accident and misfortune in doing any lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent;
> (b) When committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation;
> (c) When committed upon any sudden combat, without undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel or unusual manner.

Jackson does not dispute that his firing into the dwelling was an unlawful act, which eliminates the first scenario. Nor does he dispute the use of a dangerous weapon, which eliminates the third scenario of the statute. Instead, Jackson relies exclusively on the second scenario, arguing that he "acted in the heat of passion as a consequence of his being distraught over the denial of his visitation request."

¶6. Obviously, this argument ignores the requirement that there be a "sudden and sufficient provocation" before a defense of accident is permitted under § 97-3-17(b). The sole "provocation" suggested by Jackson was Quanda Anderson's decision to deny his visitation request earlier on the morning of the shooting. We do not consider that "provocation" to be either sudden or sufficient within the meaning of the statute.

¶7. As we have stated: "Jury instructions are to be granted only where evidence has been presented which

support the instruction." ***Jones v. State***, 797 So.2d 922, 927 (Miss. 2001). Because Jackson failed to present evidence that would support an accident instruction, he was not entitled to same. Thus, it was not plain error for the trial court not to grant such an instruction, sua sponte. This issue is without merit.

## II. WHETHER JACKSON RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

¶8. Our standard of review for a claim of ineffective assistance of counsel is a two-part test: the defendant must prove, under the totality of the circumstances, that (1) his attorney's performance was deficient and (2) the deficiency deprived the defendant of a fair trial. ***Hiter v. State***, 660 So.2d 961, 965 (Miss.1995). This review is highly deferential to the attorney, with a strong presumption that the attorney's conduct fell within the wide range of reasonable professional assistance. ***Id.*** at 965. With respect to the overall performance of the attorney, "counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy" and cannot give rise to an ineffective assistance of counsel claim. ***Cole v. State***, 666 So.2d 767, 777 (Miss.1995).

¶9. Anyone claiming ineffective assistance of counsel has the burden of proving, not only that counsel's performance was deficient but also that he was prejudiced thereby. ***Strickland v. Washington***, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Additionally, the defendant must show that there is a reasonable probability that, but for his attorney's errors, he would have received a different result in the trial court. ***Nicolaou v. State***, 612 So.2d 1080, 1086 (Miss. 1992). Finally, the court must then determine whether counsel's performance was both deficient and prejudicial based upon the totality of the circumstances. ***Carney v. State***, 525 So.2d 776, 780 (Miss. 1988).

¶10. Jackson claims that the following instances demonstrate that he suffered ineffective assistance of counsel during his trial. First, Jackson claims the fact that he was under the influence of powerful narcotics was not sufficiently brought to the attention of the jury. Although Jackson concedes that his trial counsel did address the issue, he argues that it "should have been better presented." Unlike Jackson, we find it easy to believe that Jackson's attorney might have declined to emphasize Jackson's drug abuse for tactical reasons and conclude that this issue falls squarely under the ambit of trial strategy. Furthermore, as the State properly notes, we have expressly rejected the idea that voluntary intoxication is a defense to murder in ***Greenlee v. State***, 725 So.2d 816, 822-23 (Miss. 1998), stating:

> Greenlee submits that while voluntary intoxication is not a defense to the crime of murder, the fact that the defendant was intoxicated negates the existence of the specific intent to commit the offense. Thus, Greenlee concludes that because he had taken three hits of LSD before the offense, he did not have the specific intent to commit murder. For this reason, Greenlee argues that the drug induced state he was in reduced murder to manslaughter and, therefore, he should have at least been granted the instruction so that this question could go to the jury. However, this argument is tantamount to a request for the jury to consider Greenlee's intoxication as a defense to the specific intent crime of murder. In ***McDaniel v. State***, 356 So.2d 1151 (Miss.1978), this Court overruled this argument which had previously been successful. The Court stated:

> If a defendant, when sober, is capable of distinguishing between right and wrong, and the defendant voluntarily deprives himself of the ability to distinguish between right and wrong by reason of becoming intoxicated and commits an offense while in that condition, he is criminally responsible for such acts.

*Greenlee*, 725 So.2d at 822-23 (Miss. 1998)(internal citations omitted)(quoting *McDaniel v. State*, 356 So.2d 1151, 1161 (Miss. 1978)). Jackson cites no authority for the proposition that his attorney should be considered ineffective for failing to bring to the jury's attention facts which should have had no bearing on the jury's verdict.

¶11. Next, Jackson again argues that the facts of this case support a claim of accident or misfortune, and he claims that his counsel's failure to suggest an accident instruction represents ineffective assistance. The analysis of Issue I is dispositive here. Jackson has failed utterly to establish a viable accident defense, and his attorney's failure to offer a groundless instruction cannot be viewed as ineffective assistance.

¶12. Finally, Jackson suggests that his attorney's failure to seek out and interview defense witnesses in preparation for the actual trial represents ineffective assistance. However, Jackson does not identify any witnesses who could have been called or how any witnesses testimony could have helped his case. Instead, Jackson relies on a number of cases holding that an attorney is ineffective when he fails to perform any pre-trial investigation or interview any witnesses at all. *See generally **Payton v. State***, 708 So.2d 559 (Miss. 1998); ***Woodward v. State***, 635 So.2d 805, 813 (Miss. 1993)(Smith, J. dissenting); ***Yarbrough v. State***, 529 So.2d 659 (Miss. 1988); ***Neal v. State***, 525 So.2d 1279 (Miss. 1987).

¶13. Assuming arguendo that Jackson's counsel did in fact fail to fully investigate and interview potential witnesses and that such a failure represented deficient performance, Jackson must still show that the deficiency prejudiced him at trial. Since Jackson admitted to every element of the crimes of which he stood accused except for intent, we cannot imagine what testimony could have possibly been elicited that might have led to an acquittal. Jackson has failed to demonstrate that his counsel's performance was deficient, or that a different result was probable, but for the alleged deficient performance. Therefore, we conclude that the claim of ineffective assistance of counsel under the totality of the circumstances of this case must fail.

### III. WHETHER JACKSON'S CONVICTIONS WERE SUPPORTED BY THE EVIDENCE ADDUCED AT TRIAL OR AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶14. Jackson appeals the denial of both his motion for directed verdict[1] and his motion for a new trial. Our standard of review for a motion for directed verdict is as follows:

> This Court's standards of review regarding a denial of a judgment notwithstanding the verdict and a peremptory instruction are the same. Our standards of review for a denial of a judgment notwithstanding the verdict and a directed verdict are also identical. Under this standard, this Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required. The above standards of review, however, are predicated on the fact that the trial judge applied the correct law.

*Coleman v. State*, 697 So.2d 777, 787-88 (Miss. 1997).

¶15. In contrast, our standard of review for claims that a judgment is against the overwhelming weight of the evidence is as follows:

> In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. As such, if the verdict is against the overwhelming weight of the evidence, then a new trial is proper.

*Dudley v. State*, 719 So.2d 180, 182 (Miss. 1998)(internal citations omitted).

¶16. Jackson offers three challenges to the weight and sufficiency of the evidence. First, he repeats his earlier argument that the evidence showed he lacked the requisite intent to commit murder, presumably due to his drugged state. As was noted above under Issue II, voluntary intoxication is not a defense to murder. *Greenlee*, 725 So.2d at 822-23. Second, Jackson once again argues that the facts of the case supported a finding of accident or misfortune. We have already addressed and rejected this argument in Issue I.

¶17. Finally, Jackson asserts that the record does not support murder but only heat of passion manslaughter. In support of that theory, Jackson points to his own testimony dealing with his mental state at the time of the shooting and the fact that he was distraught over being denied visitation. Jackson offers no authority whatsoever for this proposition. Miss. Code Ann. § 97-3-19 (2000) defines murder as:

> (1) The killing of a human being without authority of law by any means or in any means or in any manner shall be murder in the following cases:
>
> ....
>
> (b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual;

We have held that "the question of whether the defendant has committed murder or manslaughter is ordinarily a question to be resolved by the jury." *Strahan v. State*, 729 So.2d 800, 806 (Miss. 1998).

¶18. The record reflects that heat-of-passion manslaughter instructions were given. However, clearly a jury could reasonably consider firing a weapon through the door of a dwelling, immediately after someone has gone inside, to be "an act eminently dangerous to others and evincing a depraved heart." Thus, pursuant to our standard of review, and considering the evidence in the light most favorable to the State and accepting as true the evidence supporting the verdict, the trial court did not err in denying Jackson's motions for directed verdict and for a new trial.

**CONCLUSION**

¶19. Based on the foregoing analysis, the circuit court's judgment is affirmed.

¶20. **COUNT I: CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS**

**AFFIRMED.**

**COUNT II: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. THIS SENTENCE SHALL RUN CONSECUTIVELY WITH COUNT I AND CONCURRENTLY WITH COUNT III.**

**COUNT III: CONVICTION OF SHOOTING A HANDGUN INTO AN OCCUPIED DWELLING AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. THIS SENTENCE SHALL RUN CONSECUTIVELY WITH COUNT I AND CONCURRENTLY WITH COUNT II.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR.**

1. Actually, Jackson moved to dismiss due to "the fact that the State has failed to prove the charge of murder", which we consider to be a motion for directed verdict in substance if not in form.