MYERS, J.,
for the Court.
¶ 1. Johnny Lee Brown was convicted in the Circuit Court of Scott County for burglary of an inhabited dwelling. The court sentenced Brown to a term of twenty-two years to be served in the custody of the Mississippi Department of Corrections. Brown assigns the following issues to be reviewed by this Court:
I. WHETHER THE JURY WAS PROPERLY INSTRUCTED
II. WHETHER IT WAS ERROR FOR THE APPELLANT’S FINGERPRINTS TO BE ADMITTED INTO EVIDENCE
III. WHETHER THE VERDICT WAS CONTRARY TO THE OVERWHELMING WEIGHT OF LAW AND EVIDENCE
IV. WHETHER THE APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL
V. WHETHER THE APPELLANT’S SENTENCE VIOLATES THE PROPORTIONALITY RULE
STATEMENT OF FACTS
¶ 2. Mary Frances Royals asked a family friend, Nell Boykin, to watch after her residence while she was out of town on her job. Abiding by this request, Boykin arrived at Royals’s residence and noticed that the back door had been forced open. No one was inside but Boykin observed that clothes and other items were scattered about the house. At that point, Boy-kin left and called the Scott County Sheriffs Department.
¶ 3. Jonathan Edwards, a deputy sheriff, arrived at Royals’s home and investigated the scene. During the course of his investigation, Edwards packaged and sealed several items of evidence to be delivered to the Mississippi Crime Lab.
¶ 4. Royals was told that someone had broken into her residence. She returned to inspect the house. Royals informed the sheriffs department that three cameras, a typewriter, a CD player, VCR tapes, and various pieces of jewelry had been taken.
*217 ¶ 5. Jack Magee, an investigator for the sheriffs department, recovered one of the missing cameras from Save-A-Buck Pawn Brokers in Jackson. The other two missing cameras were also recovered by Magee except these were found at USA Pawn in Jackson. Magee retrieved the pawn receipts for these three cameras and Brown’s name and address appeared on all of them. The managers of the two pawn shops testified that the receipts in question were in fact their respective business records.
¶6. The film from these cameras was retrieved and developed. Royals was unable to identify one of the individuals in the set of pictures. Magee testified that the individual in question was Teresa Fields, Brown’s girlfriend. This testimony was corroborated by the testimony of Fields’s sister, Irish Patrick.
¶ 7. The State offered Jason Pressly, an employee of the Mississippi Crime Lab, as an expert in fingerprint identification. Pressly performed analyses of fingerprints found on a watch box that was retrieved from the Royals’s residence. Pressly testified that a latent fingerprint found on the watch box matched a known print attributable to Brown.
¶ 8. After the State rested, Brown moved for a directed verdict. The court denied this motion. Brown took the stand in his own defense. He testified that the alleged stolen cameras were in fact purchased by him from an unknown individual in a McDonald’s parking lot.
¶ 9. At the close of all the evidence, the jury deliberated for over two hours but could not reach a unanimous verdict. The trial judge ordered the jurors to reconvene the following morning at which time they reached a unanimous verdict of guilty. Two days later, a sentencing hearing was held. The trial judge sentenced Brown to a term of twenty-two years to be served in the custody of the Mississippi Department of Corrections. As a result, Brown filed this timely appeal.
LEGAL ANALYSIS
I. WHETHER THE JURY WAS PROPERLY INSTRUCTED
¶ 10. Brown argues that the State failed to properly instruct the jury as to the elements of the crime, the proper burden of proof, and the standard for a case based on circumstantial evidence. In addition, Brown argues- that the trial court erred in failing to instruct the jury sua sponte when the State’s instructions were defective.
¶ 11. The State argues that Brown failed to object to any alleged deficiencies in the jury instructions, and as a result, is procedurally barred from raising this issue on appeal. The State further argues that Brown has failed to include all the instructions in the record.
¶ 12. It is well settled in our case law “that a defendant is confined on appeal to the grounds he raised at trial.” Jones v. State, 776 So.2d 643, 652 (¶ 29) (Miss.2000) (citing Roundtree v. State, 568 So.2d 1173, 1177 (Miss.1990)). In addition, we have “repeatedly stated that the appellant must make sure the record contains all matters necessary for appeal.” Boatner v. State, 754 So.2d 1184, 1192 (¶ 26) (Miss.2000); Burney v. State, 515 So.2d 1154, 1160 (Miss.1987); Yates v. State, 342 So.2d 312, 316 (Miss.1977); Shelton v. Kindred, 279 So.2d 642, 644 (Miss.1973). In order for this Court to determine the sufficiency of the jury instructions, all instructions must be included in the record. Rials v. Duckworth, 822 So.2d 283 (¶ 11) (Miss.2002), The reason for this is that “[o]n appeal, individual jury instructions *218 should not be considered in isolation, but should be considered as a whole.” Id.
¶ 13. The trial transcript indicates the State presented three jury instructions at the close of the evidence. The trial judge specifically asked Brown’s counsel if he had any objections to which he replied in the negative. As a result, Brown is precluded from raising this issue on appeal.
¶ 14. Moreover, the record only includes jury instructions D-1, D-2 and D-10. These three were offered by Brown not the State. We acknowledge the fact that Brown requested every jury instruction “whether granted, refused or withdrawn” in his designation of the record. Nevertheless, it remains the appellant’s ultimate duty to ensure an appropriate record for our review. After noticing that the State’s instructions were missing, Brown could have filed a motion to supplement the record under Mississippi Rule of Appellate Procedure 11(e). We decline to review this issue on the merits.
II. WHETHER IT WAS ERROR FOR THE APPELLANT’S FINGERPRINTS TO BE ADMITTED INTO EVIDENCE
¶ 15. Brown argues that his fingerprints are inadmissible because they were illegally obtained. Brown asserts that he was detained and forced to submit to fingerprinting at the sheriffs department without first receiving his Miranda warnings. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
¶ 16. The State argues that Brown failed to object at trial, and therefore, is precluded from raising this issue on appeal. The State further argues that Miranda warnings were unnecessary because Brown voluntarily brought himself to the sheriffs department.
¶ 17. Failure to object at trial waives the objection on appeal. Bounds v. State, 852 So.2d 51, 55 (¶ 10) (Miss.Ct.App.2002). This rule applies to Fourth Amendment claims. Stevens v. State, 458 So.2d 726, 730 (Miss.1984). Simply put, if the defendant fails to object to the admission of illegally obtained evidence, the objection is waived. Id.
¶ 18. Moreover, we have held that Miranda warnings are not required in a non-custodial setting. Hester v. State, 753 So.2d 463, 469 (¶ 23) (Miss.Ct.App.1999). In considering whether a person is in custody for Miranda purposes, it is necessary to analyze “whether a reasonable person would feel that [he] was in custody.” Hunt v. State, 687 So.2d 1154, 1160 (Miss.1996). In other words, “whether a reasonable person would feel that [he] was going to jail — and not just being temporarily detained.” Id.
¶ 19. Their record reveals no objection to the admissibility of Brown’s fingerprints. In addition, the record contains uncontradicted testimony that Brown freely came to the sheriffs department to provide his fingerprints after a phone call from Deputy Patrick. He was not arrested and he arrived at the department of his free will. Under these circumstances, we find that a reasonable person would not think he was in the custody of the sheriffs department. The trial court did not err in allowing Brown’s fingerprints to be admitted into evidence.
III. WHETHER THE VERDICT WAS CONTRARY TO THE OVERWHELMING WEIGHT OF LAW AND EVIDENCE
¶ 20. Brown argues that the State failed to meet its burden of proof and that improper matters occurred during the course of the trial. The State argues that *219 it did, in fact, meet its burden of proof and that Brown’s allegations are not supported by the record.
¶ 21. The standard of review in determining whether a jury verdict is against the overwhelming weight of the evidence is well settled. “[T]his Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial.” Dudley v. State, 719 So.2d 180, 182(118) (Miss.1998). On review, the State is given “the benefit of all favorable inferences that may reasonably be drawn from the evidence.” Griffin v. State, 607 So.2d 1197, 1201 (Miss.1992). “Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.” Dudley, 719 So.2d at 182(¶ 8). “This Court does not have the task of reweighing the facts in each case to, in effect, go behind the jury to detect whether the testimony and evidence they chose to believe was or was not the most credible.” Langston v. State, 791 So.2d 273, 280 (¶ 14) (Miss.Ct.App.2001).
¶22. The State presented evidence of a latent fingerprint that was lifted from a watch box located in Royals’s bedroom. The State presented expert testimony which positively identified a match between the latent fingerprint and the known prints of Brown. The State also presented evidence of three pawn shop receipts bearing Brown’s name and address. A picture of Brown’s girlfriend was found on a roll of film found in one of the stolen cameras.
¶23. Judging these facts most favorable to the State, a reasonable juror could infer that Brown was guilty beyond a reasonable doubt. The weight of the evidence against Brown demonstrates that sufficient proof was offered by the State for the jury to find Brown guilty of burglary of a dwelling house pursuant to Mississippi Code Annotated Section 97-17-23 (Rev.2000).
¶ 24. As for the alleged improper matters, we see no error. The record indicates that after the close of the evidence a juror reentered the courtroom to ask some clarifying questions. The trial judge, in the presence of counsel for both parties, refused to comment and told her that their judgment must be made on the evidence that had already been presented. The trial judge then asked each attorney whether he had any objections. Both men said no.
¶ 25. At ten minutes until five, the foreman of the jury told the trial judge that they had not reached a unanimous verdict. The trial judge specifically told the foreman not to disclose the votes for conviction or acquittal. While the trial judge did not sequester the jury, he gave explicit instructions not to discuss the case with each other or anyone else. The trial judge then called a recess until nine o’clock the next morning at which time the jury returned a unanimous verdict of guilty.
IV. WHETHER THE APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL
¶26. Brown argues that his counsel was ineffective because they failed to object to the lack of jury instructions and to the introduction of his fingerprints into evidence. The State argues that there is no indication other than Brown’s allegations that counsel’s performance fell below the standards outlined in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
¶ 27. The standard of review for a claim of ineffective assistance of counsel is a two-part test: “the defendant must prove, un *220 der the totality of the circumstances, that (1) his attorney’s performance was deficient and (2) the deficiency deprived the defendant of a fair trial.” Woodson v. State, 845 So.2d 740, 742(¶ 8) (Miss.Ct.App.2003) (citing Hiter v. State, 660 So.2d 961, 965 (Miss.1995)). The defendant “must show that there is a reasonable probability that, but for his attorney’s errors, he would have received a different result at trial.” Id. at (¶ 9). Our review is “highly deferential to the attorney, with a strong presumption that the attorney’s conduct fell within the wide range of professional assistance.” Id. at (¶ 8). In addition, complaints concerning counsel’s failure to make certain objections at trial fall within the ambit of trial strategy and are insufficient to produce an ineffective assistance of counsel claim. Jackson v. State, 815 So.2d 1196, 1200(¶ 8) (Miss.2002) (citing Cole v. State, 666 So.2d 767, 777 (Miss.1995)).
¶ 28. When Brown was arraigned, Robert Brooks, a public defender, was there representing him. At the arraignment Brown stated to the trial judge that he wanted his own attorney, Laurel Weir. The trial judge allowed Brown to contact Weir. The trial judge ordered Weir to appear in court the next morning. That next morning Brown informed the court that he had contacted Weir, but Brown’s family hired Glenn Folse. Folse was not present on this day, but Brooks and another public defender, Christopher Collins, were present on behalf of Brown. At that time, the court ordered Brooks and Collins to remain on the case and assist Folse.
¶29. One week later, Brown filed a motion for continuance. He claimed that he paid Folse but Folse never showed up. On that same day, the trial judge granted Brown’s motion and set the trial for a later date.
¶ 30. The morning of trial Collins and Folse appeared on Brown’s behalf. Brooks was not present because he had recently undergone open heart surgery. Folse made an announcement on the record stating that Brown had fired him and intended to use Brooks instead. Folse also testified that he was there at the court’s disposal and would assist in any way he could.
¶ 31. Brown also made a statement on the record that he had paid Folse but Folse had done nothing to that point. Brown argued for another continuance but the trial judge denied Brown’s request stating that he had previously ordered Brooks and Collins to stay on the case and they had done so. Despite the fact that Brooks was not present, Brown was represented at trial by Collins and Folse.
¶ 32. Brown has failed to prove either part of Stñckland. He has not demonstrated that he was prejudiced by his court appointed counsel. Moreover, he has not demonstrated that the result at trial would have been different but for his counsel’s conduct.
¶ 33. As noted above, Brown’s fingerprints were not illegally obtained. As a result, they were admissible at trial. We find it in the complete discretion of Brown’s counsel whether to object to their admissibility. We also find no error in counsel’s alleged failure to object to the adequacy of the jury instructions. We have no way of knowing whether the jury instructions were inadequate because Brown has failed to produce a sufficient record for our review. We can only presume that counsel’s failure to object was within the range of reasonable professional assistance.
V. WHETHER THE APPELLANT’S SENTENCE VIOLATES THE PROPORTIONALITY RULE
¶ 34. Brown argues his sentence is too harsh because other defendants in *221 Scott County have not received such a sentence and because his case was based entirely on circumstantial evidence. Brown argues the sentence he received amounts to cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.
¶ 35. Brown alleges that the trial court erred by not implementing the proportionality analysis set out in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). We disagree. A sentence that does not exceed the maximum period allowed by statute will not be disturbed on appeal. Towner v. State, 837 So.2d 221, 227 (¶ 20) (Miss.Ct.App.2003) (citing Wallace v. State, 607 So.2d 1184, 1188 (Miss.1992)). The imposition of a sentence is within the discretion of the trial court, and appellate courts will not review the sentence, if it is within the limits prescribed by statute. Id.
¶ 36. Under Mississippi law, the maximum sentence for a person convicted of the burglary of a dwelling house is twenty-five years. Miss.Code Ann. § 97-17-23 (Rev.2000). Brown received twenty-two years for the conviction in question. Since his sentence falls within the limits prescribed by statute, we refuse to review it and any analysis under Solem would be unnecessary.
¶ 37. Moreover, the transcript of the sentencing hearing reveals that Brown has previously been convicted of burglary and served a term of seven years. Brown has also been charged with seventeen other burglaries since 1985 but all of those charges were dropped. We find this issue to be without merit.
¶ 38. THE JUDGMENT OF THE CIRCUIT COURT OF SCOTT COUNTY OF CONVICTION OF BURGLARY OF A DWELLING HOUSE AND SENTENCE OF TWENTY-TWO YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO SCOTT COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, CHANDLER AND GRIFFIS, JJ., CONCUR.