MYERS, J.,
for the Court.
¶ 1. Pinkie Pulliam was convicted in the Circuit Court of Union County for the sale of a controlled substance. He was sentenced to a term of twenty years in the custody of the Mississippi Department of Corrections with eight years suspended Aggrieved by the result, Pulliam perfected this appeal raising the following issues for our review.
I. WAS THE EVIDENCE PRESENTED AT TRIAL SUFFICIENT TO SUSTAIN A GUILTY VERDICT?
II. DID THE TRIAL COURT ERR IN REFUSING JURY INSTRUCTIONS D-2, D-6, D-8, D-12 AND D-13?
III. DID THE TRIAL COURT ERR IN ALLOWING THE STATE’S WITNESS TO COMMENT ON THE VIDEOTAPE?
IV. DID THE TRIAL COURT ERR IN ALLOWING THE STATE TO INTRODUCE EVIDENCE OF THE APPELLANT’S PRIOR CRIMES?
STATEMENT OF FACTS
¶ 2. Timothy Smithey, an officer with the New Albany Union County Drug Task *126 Force, conducted a “pre-buy” meeting with a confidential informant named Reginald Williams. During the meeting, Smithey searched Williams and his vehicle. Smi-they wired Williams with audio and video equipment and gave him forty dollars to purchase cocaine. Smithey instructed Williams to drive to a house owned by Pulliam’s grandmother. Pulliam was living there at the time.
¶ 3. Williams proceeded to the house in question while Smithey and other officers remained nearby. Williams entered the house and stayed for a short time. Williams then left the house and returned to the “pre-buy” location. Williams turned the cocaine that he had purchased over to Smithey. Smithey searched Williams and his vehicle a second time. Williams was paid for his services and then left.
¶ 4. Smithey placed the substance he received from Williams into an evidence bag. Smithey sealed the evidence bag and sent it to the crime lab.
¶ 5. As a result, Pulliam was indicted and charged with the sale of a controlled substance in violation of Mississippi Code Annotated Section 41-29-139(a). The trial court appointed Pulliam counsel. The State called Smithey and Williams to testify. In addition, the State called Carole Karr, a forensic scientist with the Mississippi Crime Lab. Karr testified that the substance in question was, in fact, crack cocaine. Pulliam testified in his own defense. In addition, Pulliam called Smithey as a defense witness.
¶ 6. At the close of the evidence, the jury returned a guilty verdict. Pulliam filed a motion for judgment notwithstanding the verdict, or in the alternative, a motion for a new trial which was later denied. As a result, Pulliam filed the present appeal. Finding no error, we affirm.
I. WAS THE EVIDENCE PRESENTED AT TRIAL SUFFICIENT TO SUSTAIN A GUILTY VERDICT?
¶ 7. According to Pulliam, the State failed to present sufficient factual evidence to the jury for it to find him guilty beyond a reasonable doubt. Pulliam argues the evidence was insufficient because he was never identified by anyone other than Williams.
¶ 8. When someone raises the issue of legal sufficiency, we reverse only when “evidence of one or more of the elements of the charged offense is such that reasonable and fair-minded jurors could only find the accused not guilty.” Otis v. State, 853 So.2d 856, 865 (¶31) (Miss.Ct.App.2003). This standard of review applies to a trial court’s denial of both a motion for a directed verdict and a motion for judgment notwithstanding the verdict. Id. In addition, matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. Ferrell v. State, 810 So.2d 607, 610 (¶ 13) (Miss.2002).
¶ 9. We find that the trial court did not err in denying Pulliam’s motions for a directed verdict and for judgment notwithstanding the verdict. There was sufficient evidence presented by the State for reasonable and fair-minded jurors to find Pul-liam guilty of the sale of crack cocaine.
¶ 10. The taped footage taken from Pul-liam’s grandmother’s house shows Williams talked to Pulliam. Williams asked Pulliam for forty dollars worth of cocaine. Pulliam placed two small rocks on the table. Williams tendered the forty dollars to Pulliam and left the house.
¶ 11.. At trial, Williams unequivocally testified that Pulliam sold him the cocaine. Smithey testified that he recognized the voice on the tape as being Pulliam’s. The State’s expert testified that the two rocks that Pulliam placed on the table were co- *127 eaine. More importantly, any determination as to the credibility of these witnesses was for the jury to decide. This issue lacks merit.
II.DID THE TRIAL COURT ERR IN REFUSING JURY INSTRUCTIONS D-2, D-6, D-8, D-12 AND D-13?
¶ 12. Pulliam argues the trial court committed reversible error in refusing defendant’s jury instructions D-2, D-6, D-8, D-12, and D-13. D-2 dealt with the jury’s verdict. The remaining jury instructions dealt with the State’s burden of proof.
¶ 13. The standard of review regarding a trial judge’s refusal of a jury-instruction is well settled. “Jury instructions are to be read together and taken as a whole with no one instruction taken out of context.” Austin v. State, 784 So.2d 186, 192 (¶ 18) (Miss.2001). A defendant is entitled to have jury instructions given which present his theory of the case. Id. However, “this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.” Id.
¶ 14. Pulliam submitted fourteen jury instructions. The trial judge refused D-2 for two reasons. First, because it was duplicated by or cumulative with the court’s instruction (C-4). Second, because it contained “a partial form of the verdict which tends to confuse the jury.” We agree.
¶ 15. The trial judge was also correct in refusing D-6, D-8, D-12, and D-13. Specifically, D-6 was repetitive of D-5. Furthermore, D-13 was identical in language to D-5. D-8 was cumulative to D-10. Finally, D-12 is cumulative to D-7.
¶ 16. Reading the remaining jury instructions together and interpreting them as a whole, we find that the trial court did not err in refusing instructions D-2, D-6, D-8, D-12, and D-13. This issue lacks merit.
III. DID THE TRIAL COURT ERR IN ALLOWING THE STATE’S WITNESS TO COMMENT ON THE VIDEOTAPE?
¶ 17. Several times during the presentation of the video evidence, Williams was allowed to comment on the film. Pulliam argues that the trial court erred in allowing Williams’s comments because it invaded the province of the jury.
¶ 18. If a witness’s comments are used solely for the purpose of showing the jury exactly what was taking place, they are not only entirely permissible but also helpful to the jury. Blue v. State, 825 So.2d 709, 712 (¶ 12) (Miss.Ct.App.2002). This is to be distinguished from the circumstance where a witness attempts to place his own subjective interpretation of events transpiring in the video based on nothing beyond the witness’s own inspection of the contents of the videotape. Id. In other words, if the witness’s testimony is confined to matters actually perceived firsthand, there can be no improper prejudice to the defendant in permitting the witness to relate those observations to the jury during its viewing of the tape.
¶ 19. The video camera that captured the footage was attached to Williams’s clothing. As a result, Williams had firsthand knowledge. In addition, Williams’s testimony was confined to matters perceived firsthand. We find that the trial court did not err in allowing Williams’s comments. This issue is without merit.
IV. DID THE TRIAL COURT ERR IN ALLOWING THE STATE TO INTRODUCE EVIDENCE OF THE APPELLANT’S PRIOR CRIMES?
¶ 20. Pulliam argues that the trial court committed reversible error in allowing evidence of other crimes at trial. *128 The trial court’s admission of evidence will not be disturbed absent an abuse of discretion. Rambus v. State, 804 So.2d 1052, 1059 (¶ 20) (Miss.Ct.App.2001).
¶ 21. On direct examination, Pulliam testified that he had not sold drugs, that he was not a drug dealer, and that he was “only guilty of being a drug addict.” Pul-liam also testified that he had been convicted of a drug offense in 1984, but that “the Supreme Court overturned it.” After the defense tendered the witness, the State asked the court, outside the jury’s presence, for leave to impeach Pulliam by showing certain evidence. The State wanted to introduce evidence of three particular videotaped sales and ask Pulliam about two sales of marijuana and one sale of cocaine with which he was charged. The State specified that it was not proceeding under Mississippi Rule of Evidence 609, but was attempting to impeach Pulliam’s testimony that he had never sold drugs.
¶ 22. The trial court ruled as follows: The Court is of the opinion that that door has certainly been opened as to these charges and anything that falls within the frame work of that particular indictment that culminated in a conviction that resulted in a reverse that the State is entitled to look into that as far as they can reasonably go since the door has been opened as far as that particular charge even though ordinarily it would not be admissible since it culminated in an acquittal rendered by the Supreme Court.... The Court is of the opinion that the other charges would not be admissible under the rules of evidence, however the Court is of the further opinion that based on the testimony as the Court understands it offered by the defendant in this case is that if the tapes that the proffer made by the State as to what these other tapes might show if that bears proves to be true that under those circumstances that those particular tapes could be offered for impeachment purposes so I’m going to allow that testimony or that area of cross-examination for the purpose of impeachment assuming the tapes show what was stated.
¶ 23. Under the Mississippi Rules of Evidence, when a defendant “opens the door” by testifying that he has not sold drugs, it is permissible for the State to impeach him by inquiring into past drug sales which go towards the veracity of the defendant’s testimony. Scott v. State, 796 So.2d 959, 967 (¶26) (Miss.2001). The trial court limited its ruling to those matters brought out by Pulliam himself on direct examination. Moreover, the court instructed the jury that the evidence in question could not be considered to prove character in conformity, but only for evaluating Pulliam’s character for truthfulness or untruthfulness.
¶ 24. We find the trial judge did not abuse his discretion in this instance. Pul-liam’s final issue is without merit.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF UNION COUNTY OF CONVICTION OF SALE OF COCAINE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH EIGHT YEARS SUSPENDED, FIVE YEARS’ POST-RELEASE SUPERVISION AND $40 IN RESTITUTION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO UNION COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, CHANDLER AND GRIFFIS, JJ., CONCUR.