# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-KA-00236-SCT

*LUCKY TURNER a/k/a LUCKY LEROY TURNER*
*a/k/a CHINO*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/14/2021 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| TRIAL COURT ATTORNEYS: | ROBERT SHULER SMITH |
| | SUE MILLER PERRY |
| | SHAUNTE' DENISE WASHINGTON |
| | TERRI DENISE MURRY-WHALEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CASEY BONNER FARMER |
| DISTRICT ATTORNEY: | JODY EDWARD OWENS II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/22/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., MAXWELL AND GRIFFIS, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. Lucky Turner admittedly shot Jeffrey Johnson in the back following a confrontation outside a convenience store. At his trial for aggravated assault, Turner claimed he acted out of fear for himself and his sixteen-year-old nephew. But video surveillance and eyewitness testimony supported the State's theory that Turner was the aggressor. A jury convicted

Turner of aggravated assault. And he was sentenced to fifteen years' imprisonment, with three years suspended.

¶2. On appeal, Turner claims his counsel was constitutionally ineffective for not making certain objections. He also claims that admission of unchallenged evidence was plain error. But deciding whether to object to particular evidence is generally deemed trial strategy. And such actions typically do not form the basis for an ineffective-assistance-of-counsel claim. Moreover, Turner cannot show that any of this evidence would have been excluded by the trial court had his counsel in fact objected. Nor has he proved that admission of this evidence caused prejudice or manifest injustice. Even absent the complained-of evidence, eyewitness testimony, surveillance video, and Turner's own admission overwhelmingly supported the jury's guilty verdict.

¶3. We affirm Turner's aggravated-assault conviction and sentence.

## Turner's Trial

### I. State's Case

#### *A. Victim's Physician Dr. Robert Finley*

¶4. At Turner's trial, the State first called Johnson's treating emergency room physician, Dr. Richard Finley. Dr. Finley testified that Johnson presented to the ER with a serious bullet wound. The bullet clipped his lung, injured his diaphragm, and ruptured his spleen before exiting his side. This wound required emergency surgery and a one-week hospital stay.

### B.    Eyewitness Deidra Lowe

¶5.    The State next called eyewitness Deidra Lowe.  Lowe testified that she was hanging out in the Chuk Stop parking lot on West Northside Drive in Jackson, Mississippi, when Johnson appeared.  He was visibly intoxicated.  Soon after, Turner, whom Lowe knew, pulled up to the Chuk Stop in a Cadillac SUV.  The Cadillac SUV was driven by another man, later identified as Turner's nephew, Jah'Quez Wiggins.  Turner went over to Lowe's car to speak to her.  And Johnson began yelling at them, calling them names.  Turner and Wiggins then had a verbal altercation with Johnson.  Wiggins pulled a gun out of the SUV, but Turner took the gun away and returned it.

¶6.    Lowe testified that Johnson did not appear armed or threatening—just drunk and "talking crazy."  At some point, Turner entered the store, while Wiggins stood outside the door, still having words with Johnson.  Wiggins got the gun again and followed Johnson around the side of the store.  Lowe then heard shots ring out and saw Turner run out of the store.  Lowe testified she saw Turner take the gun from Wiggins.  Lowe then heard more gunshots but did not see Turner shoot Johnson.  Turner and Wiggins then ran to the SUV and sped off.

### C.    Responding Officer Lincoln Lampley

¶7.    Jackson Police Officer Sergeant Lincoln Lampley also testified.  A patrol officer at the time of the shooting, Sergeant Lampley arrived at the Chuk Stop to find Johnson with a severe gunshot wound.  According to Sergeant Lampley, it "appeared that the bullet entered on a flat trajectory coming into the lower left part of his back and then tumbled because the

exit wound was large and a gaping wound." Johnson's breathing was labored, and Sergeant Lampley "could actually see lung tissue coming in and out of the gaping wound under his chest on the left side."

¶8. According to Sergeant Lampley, Johnson was very intoxicated, was not aggressive at all, and was not armed. Johnson told Lampley that he (Johnson) had been "approached by two black males in a black SUV who attempted to engage him in a verbal and physical altercation." Johnson said he "attempted to avoid the verbal and physical altercation by walking away down Union Street." But "once he got . . . not too far from the guys that were in the SUV they started shooting at him and shot him in the back."

### D. Detective Kevin Nash

¶9. The State next called Detective Kevin Nash, who had arrived at the Chuk Stop after Lampley. Detective Nash went inside the store, talked to store clerk, and viewed the surveillance video of the incident. The release of this video to the news media led to both Turner and Wiggins being identified and turning themselves in. During Nash's testimony, the State entered the surveillance video into evidence, with Nash describing the footage to the jury.

### E. Surveillance Video

¶10. The video showed that, before Turner entered the store, he actually got Wiggins's gun from the SUV and raised it toward Johnson. Johnson walked away, and Turner and his friend followed. Turner then stopped at Lowe's car, gave the gun to his friend, and gestured to his friend to return to the car. Johnson can be seen walking down a side street, eventually

4

out of view of the cameras. Wiggins then left the SUV and walked in the direction Johnson last had been seen on camera, but not before he went back to the car and got the gun. The video showed Wiggins pointing the gun in the direction Johnson last had been seen. Another camera captures Turner exiting the store, heading toward Wiggins. Turner took the gun from Wiggins, raised it, and walked off view of the camera. Turner then reappeared on the camera, and he and Wiggins got into their SUV and left. Soon after, Johnson walked into the camera view, visibly bleeding.

## II. Turner's Defense

¶11. After the State rested, Turner testified in his defense. He told the jury that his sixteen-year-old nephew, Wiggins, had driven him to the Chuk Stop to buy a beer that night. Turner saw his friend Lowe and went over to talk to her. At some point in this conversation, Johnson "buzzed in on it." Johnson said, "think you going, bitch." Turner had no idea why Johnson called him a bitch. Turner testified that he was concerned because he had been shot before and was worried by the way Johnson was talking. Turner testified that Wiggins was also worried, so he got the gun out of the SUV when he heard Johnson say he was going to kill Turner. Turner told Wiggins it was unnecessary to pull a gun and that he was fine. Turner put the gun back in the truck, but Johnson continued to mouth off.

¶12. The defense played the surveillance video again during Turner's testimony. Turner explained he thought Johnson had a gun—though Turner admitted he never saw one—and that when he heard gunshots from inside the convenience store, he assumed Johnson had been shooting at Wiggins. So Turner claimed he took Wiggins's gun and began shooting out

5

of concern for Wiggins. But on cross-examination, Turner admitted that it was Wiggins who fired the shots Turner had heard because "the surveillance showed it." When asked to admit Johnson had been shot in the back, Turner responded, "Yeah, that's why I turned myself in."

### III.     Jury's Verdict

¶13.    A jury convicted Turner of aggravated assault. And the trial court sentenced him to fifteen years' imprisonment, with three years suspended. Turner appeals his conviction. He raises claims of ineffective assistance of counsel and plain error.

### Discussion

### I.     Ineffective-Assistance-of-Counsel Claim: Failure to Object

¶14.    Turner's primary contention is that his trial counsel provided constitutionally ineffective assistance[1] by failing to make three particular objections.

¶15.    First, in Turner's view, his counsel failed to object to Sergeant Lampley's testimony that Johnson's wound appeared to be a gunshot wound to the back with the exit wound in the chest. Turner claims this opinion testimony could only be rendered by an expert in crime-scene forensics or forensic pathology, and Sergeant Lampley had not been tendered or

---

[1] "The right to effective assistance of counsel can be found in the Sixth Amendment of the United States Constitution." *Havard v. State*, 928 So. 2d 771, 780 (Miss. 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). "The Sixth Amendment, however, guarantees only the right to reasonably effective counsel or competent counsel, not perfect counsel or one who makes no mistakes at trial." *Id.* (citing *Wilcher v. State*, 863 So. 2d 719, 734 (Miss. 2003); *Mohr v. State*, 584 So. 2d 426, 430 (Miss. 1991); *Cabello v. State*, 524 So. 2d 313, 315 (Miss. 1988)).

qualified as such an expert.[2]    Turner alleges this improper lay opinion testimony—that

Johnson had been shot in the back—prejudiced his self-defense theory.

¶16.    Second, Turner argues his counsel failed to object to Sergeant Lampley's relaying to

the jury what Johnson had told him.  Turner asserts Johnson's statement was inadmissible

hearsay.[3]  More than that, Turner argues Johnson's statement violated his right to confront

the witnesses against him.[4] So his third alleged failure by his counsel was the failure to

additionally object to Sergeant Lampley's repeating what Johnson had said based on the

Confrontation Clause.

¶17.    Typically, ineffective-assistance claims are more appropriate for post-conviction

petitions.  *Archer v. State*, 986 So. 2d 951, 955 (Miss. 2008).  But there is an exception when

---

[2] Mississippi Rule of Evidence 701(c) limits lay opinion testimony to testimony that is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

[3] Mississippi Rule of Evidence 801(c) defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  "Hearsay is not admissible except as provided by law."  Miss. R. Evid. 802.

[4] As this Court has explained:

The Sixth Amendment to the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause confers a right to confront "those who 'bear testimony'" against the defendant. *Crawford v. Washington*, 541 U.S. 36, 51, 124 S. Ct. 1354, 1364, 158 L. Ed. 2d 177 (2004). Thus, the testimonial statements of a witness who does not testify at trial are inadmissible unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. *Id.* at 68, 124 S. Ct. at 1374.

*Conners v. State*, 92 So. 3d 676, 682-83 (Miss. 2012) (alterations in original).

"the issues are fully apparent from the [trial] record[.]" Miss. R. App. P. 22 cmt. In fact, the comment to Appellate Rule 22 says that an ineffective-assistance claim based on counsel's alleged "failure to object to evidence offered by the state . . . *must* be raised on direct appeal." *Id.* (emphasis added).

¶18. So there is no procedural hurdle to Turner's three ineffective-assistance claims raised on direct appeal. But there is a high substantive hurdle. To succeed on his ineffective-assistance-of-counsel claim, Turner "has the burden of proving, not only that counsel's performance was deficient but also that he was prejudiced thereby." *Jackson v. State*, 815 So. 2d 1196, 1200 (Miss. 2002) (citing *Strickland*, 466 U.S. at 687). And Turner cannot meet this burden.

¶19. First, Turner cannot show his counsel's performance was deficient. This Court has been clear that "counsel's choice whether to make certain objections fall within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim." *Bell v. State*, 879 So. 2d 423, 440 (Miss. 2004) (citing *Jackson*, 815 So. 2d at 1200); *see also Nix v. State*, 8 So. 3d 141, 144 (Miss. 2009) (citing *Bell*, 879 So. 2d at 440; *Cole v. State*, 666 So. 2d 767, 777 (Miss. 1995)).

¶20. But even if Turner's counsel's alleged failures to object could give rise to an ineffective-assistance-of-counsel claim, Turner cannot show prejudice. "For prejudice to exist, there must be a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Ray v. State*, 238 So. 3d

1118, 1124 (Miss. 2018) (quoting *Strickland*, 466 U.S. at 694). And here, Turner has failed to show the outcome of his trial for aggravated assault would have been different had his counsel made the three objections.

¶21. Regarding the claim counsel should have objected to Sergeant Lampley's opinion about the bullet wound, Turner has not shown the trial court would have excluded this testimony as an improper lay opinion. *See Walker v. State*, 863 So. 2d 1, 13-14 (Miss. 2003) (holding that ineffective-assistance claimant could not show prejudice because "he has not shown that the trial court would have excluded the photograph over the objection of trial counsel"). Sergeant Lampley did not provide an opinion based on specialized scientific knowledge. He instead provided his observation and conclusion as a police officer who had "see[n] a lot of gunshots wounds." This is permissible lay testimony. *Turner v. State*, 319 So. 3d 1066, 1087 (Miss. 2021) (holding that an officer's lay opinion testimony about the victim's position and the trajectory of the bullets was admissible because no specialized knowledge was required).

¶22. Moreover, even if this testimony had been improper, Turner cannot show, had it been excluded, the outcome would have been different. Prior to Sergeant Lampley's testimony, the emergency room doctor who treated Johnson *did* testify as an expert. He confirmed that the exit wound for the bullet was the large hole in Johnson's side—meaning the other hole in Johnson's back that Lampley saw was the entry wound. And if that were not enough, Turner himself—when asked if "You know that Jeffrey Johnson was shot in the back, correct?"—responded, "Yeah, that's why I turned myself in." So Turner cannot show his

9

self-defense theory was prejudiced by Sergeant Lampley's belief the bullet had entered through Johnson's back.

¶23.   Similarly, Turner cannot show he was prejudiced by his counsel not objecting to Sergeant Lampley's relating what Johnson told him immediately after Johnson had been shot. As with the bullet-wound testimony, Turner "has not shown that the trial court would have excluded [this statement] . . . over the objection of trial counsel." *Walker*, 863 So. 2d at 13-14.  One exception to the rule against the admission of hearsay is an excited utterance—i.e., "A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Miss. R. Evid. 803(2).  It is reasonable to believe that a person who has been shot and had a hole blown through him by a bullet that clipped his lung and damaged other internal organs has certainly been involved in a startling event or condition.  And Johnson's statement to the responding officer was made while struggling to breathe and bleeding heavily during the stress of that condition.  *See Bankston v. State*, 907 So. 2d 966, 970 (Miss. Ct. App. 2005) (holding that the trial court did not abuse its discretion by permitting, under the excited-utterance exception, the responding officer to testify to what a gunshot victim told him minutes after he was shot).

¶24.   Further, even without Johnson's statement, Lowe's eyewitness testimony and the surveillance video supported the State's theory that Turner and Wiggins were the aggressors. For these very same reasons, Turner's additional claim that Lampley's repeating Johnson's statement violated the Confrontation Clause also fails.  Even had counsel objected to Johnson's statement based on hearsay and Confrontation Clause grounds and the trial court

10

had sustained the objection, Turner cannot show the outcome of the proceedings would have been different.

## II. Plain-Error Claim: Officer Narration of Video

¶25. Turner additionally claims the trial court committed plain error by allowing Detective Nash to narrate portions of the surveillance video played to the jury. Turner's counsel did not object to the narration. So plain error provides the only avenue for appellate review. *Parker v. State*, 30 So. 3d 1222, 1227 (Miss. 2010) ("Generally, a party who fails to make a contemporaneous objection at trial must rely on plain error to raise the issue on appeal, because otherwise it is procedurally barred.").

¶26. But plain-error review is used to "correct[] obvious instances of injustice or misapplied law" and "only in situations when a defendant's substantive or fundamental rights are affected." *Green v. State*, 183 So. 3d 28, 31 (Miss. 2016); *see also Conner v. State*, 138 So. 3d 143, 151 (Miss. 2014) ("To determine if plain error has occurred, this Court must determine if the trial court has deviated from a legal rule, whether that error is plain, clear, or obvious, and whether that error has prejudiced the outcome of the trial."). And here, the alleged evidentiary error was neither obvious nor prejudicial. *See Hall v. State*, 201 So. 3d 424, 428 (Miss. 2016) ("Prejudice often is lacking when the weight of the evidence against a defendant is overwhelming.").

¶27. Narration of video evidence *is* permissible "when the narration simply describes what is occurring in the video[.]" *Gales v. State*, 153 So. 3d 632, 645 (Miss. 2014). So the State's

asking Detective Nash to describe what is happening in the video did not in itself raise any red flags requiring the trial court to intervene despite no objection by counsel.

¶28. What is not permitted is the witness's "subjective interpretation of events transpiring in the video based on nothing beyond the witness's own inspection of the contents of the videotape." *Id.* (quoting *Pulliam v. State*, 873 So. 2d 124, 127 (Miss. Ct. App. 2004)). Turner claims Detective Nash's testimony crossed the line into impermissible subjective interpretation of events he did not witness himself. But, again, Turner's counsel did not object. Instead, counsel specifically chose to cross-examine Detective Nash and challenge whether he actually could tell what transpired. And the trial court cannot be held in error for allowing trial counsel's chosen strategy.

¶29. Moreover, the jurors watched the video and were able to form their own opinions about what happened. And the video was replayed during Turner's testimony, with Turner being able to present his view of what the video showed. So Turner cannot show any prejudice.

### Conclusion

¶30. Turner has failed to show that his trial counsel was ineffective or that the trial court committed plain error. This Court affirms his aggravated-assault conviction and sentence.

¶31. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**